UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN MCDERMOTT, | ) | Case No. 3:07CV901 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| PHILIP KERNS, Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Respondent. | ) | |

Pursuant to 28 U.S.C. §2254, Petitioner Shawn McDermott, a prisoner in custody at the North Central Correctional Institution, seeks review of his Lucas County Ohio Court of Common Pleas conviction for trafficking in drugs in violation of Ohio Revised Code ("O.R.C") §2925.03, possession of drugs in violation of O.R.C. §2925.11, and possession of criminal tools in violation of O.R.C. §2923.24. ECF Dkt. #1. Respondent filed a motion to dismiss the instant petition as untimely. ECF Dkt. #8. The case was referred to the undersigned for a report and recommendation. ECF Dkt. #3. For the following reasons, the undersigned RECOMMENDS that the Court GRANT Respondent's motion and DISMISS the instant petition in its entirety with prejudice:

## I. SYNOPSIS OF THE FACTS

The Sixth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999). As set forth by the Sixth District Court of Appeals, the facts are:

> On July 26, 2002, appellant was indicted and charged with trafficking in drugs, possession of drugs and possession of criminal tools. The trafficking and possession of drugs counts included specifications that appellant was a major drug offender. In addition, Gilberto Moldonado, Julieta Rodriguez, Jesus Padilla-Montano and Antonia Herdandez-Cruz were also charged in the indictment. The charges were the result of an investigation into possible drug trafficking at 569 Woodville Road, in Toledo, Lucas County, Ohio.

Prior to July 15, 2002, officers of the Toledo Metro Drug Task Force and the Toledo Police Department received information from the FBI that Moldonado was a suspect in a drug trafficking investigation in Detroit, that he might be the subject of a federal grand jury subpoena as part of that investigation and that he was then living at 569 Woodville Road, in Toledo. Based on the information they received, the officers believed that Moldonado was using the Toledo house as a stash house and to break down loads of cocaine. On or about July 1, 2002, officers began intermittent surveillance of the house. The officers then received information from an informant that Moldonado had been at the house approximately one week before July 15, 2002, where the informant observed a large number of kilos of cocaine.

In the early morning hours of July 15, 2002, officers of the drug task force conducted a garbage pull at 569 Woodville Road, in which they removed garbage that had been placed at the curb and searched it. In searching that garbage, officers discovered a kilo wrapper with cocaine residue on it and a bottle of Inositol. Inositol is a dietary supplement that is regularly used by drug dealers to cut down cocaine to a less pure form in order to prepare it for street-level sales. In addition, the number "135" was written on the kilo wrapper. Detective Sean Jones testified that a kilo wrapper could contain about $21,270 worth of cocaine. The officers continued to surveil the home. At approximately 8:00 a.m., the officers witnessed a white male take two garbage bags out of the house and place them on the curb for collection just as the garbage truck arrived. The officers testified that the white male, who was subsequently identified as appellant, appeared to be "trash conscious," which the officers described as looking both ways before walking to the garbage truck.

As the officers continued their surveillance of the house, they saw a white Dodge Intrepid with Michigan license plates pull into the driveway and park at the rear of the house. The officers were only able to observe the activity at the house from approximately four houses away, but from that distance they saw what appeared to be people putting bags into the trunk. Approximately 45 minutes later the Intrepid left the house. Officers then followed the car and, although they did observe the Intrepid commit a traffic violation, they pulled the car over for an investigation of drug trafficking. When Detective Jones approached the passenger's side open window of the car, he detected a very strong odor of cocaine. Officers then looked into the back seat compartment of the car and noticed a white opaque bag with a tied top bulging from its contents. The bag contained rectangular shaped bundles that could be seen through the sides of the bag, and through the top of the bag officers could see that the bundles were wrapped in green cellophane plastic. Officer Lou Vasquez testified that the bundles appeared to be a large sum of money, which he and the other officers suspected were the proceeds from drug trafficking. Officers then took the driver of the car, Jesus Padilla-Montano, and the front seat passenger, Antonia Hernandez-Cruz, into custody. It was ultimately determined that the cash found in the car totaled $278,990.

Officer Duane Poole testified that based on the evidence obtained from the garbage pull, he requested a search warrant for the 569 Woodville Road property. The affidavit also included information learned from the search of the Intrepid. When the warrant was returned, officers executed a search of the home and cars on the property. Initially, when the officers entered the home, they found appellant asleep on the living room couch. They removed him from the couch and placed him on the floor. They also seized Gilberto Moldonado and Julieta Rodriguez. It is noteworthy that the living room was quite small, approximately 12 feet by 12 feet. Several items of evidence were found in the immediate vicinity of appellant. Approximately four feet from appellant was a shoe box that contained $9,510 in cash; green cellophane plastic, identical to the plastic that bound the bundles of cash found in the Intrepid, was found

in plain view about two to three feet from appellant; and a bag full of hundreds of rubber bands was found on the floor with the cellophane. The bag of rubber bands had fallen to the floor and some of the rubber bands had spilled onto the floor. Detective Kathy Brewer testified that the money found in the Intrepid was wrapped in rubber bands first and then wrapped in the green cellophane plastic. On the window sill in the living room, about three feet from appellant, officers found a ball of aluminum foil that contained a chunk of powder cocaine. Finally, Detective Jones found a ledger in the living room, but he could not be certain how far the ledger was from appellant. The ledger contained the adding and subtracting of large sums. In particular, the ledger contained the sum of $21,750, which Detective Jones stated was very close to the going rate for a kilogram of cocaine.

Upon searching the house, officers found two kilograms of cocaine under the basement stairs, a rerock machine in the basement, and a gallon of acetone near the rerock machine. A rerock machine is a homemade device used to reform cocaine once it has been diluted with additives. The machine reshapes the cocaine into brick form so that a drug trafficker can resell what appears to be an original kilogram of cocaine but which is in actuality a diluted product. Acetone is used in the rerock process. Detective Lou Vasquez testified that once the two kilos of cocaine were cut and distributed on the street, they were worth close to $200,000 per kilo. Officers further testified that the house was scantily furnished and there was no refrigerator in the kitchen. The kitchen did contain a microwave oven and a scale, which both contained cocaine residue. In addition to the house, officers searched two cars that were in the driveway of 569 Woodville Road. A 1995 Chevy pick-up truck registered to appellant contained a number of documents including: a receipt from Gillman, an auto mechanics shop, in Edna, Texas, listing appellant's name and showing that $283.47 cash was paid for repairs to a 1996 Chevy Tahoe on June 20, 2002; a Texas certificate of title for the 1995 Chevy pick up truck showing that title was transferred to appellant on June 24, 2002; an invoice for the truck showing that the price of the truck was $5,400 and that it was paid for in cash; a receipt from Complete Car Care All Tune and Lube in Louisville, Kentucky, for repairs to a 1995 Chevy pickup in appellant's name and dated July 1, 2002; and an Enterprise Rent-A-Car agreement from a rental company in Louisville, Kentucky, dated June 27, 2002, made out to Gilberto Moldonado and listing appellant as an additional driver. The Enterprise contract states that the car is to be returned by June 28, 2002. It also states that the mileage on the car when it was taken was 36,253 and that when it was returned was 37,071. Accordingly, appellant and Maldonado put approximately 800 miles on the car during the short time that they had it.

Based on the evidence presented at the trial below, the jury convicted appellant of complicity in the trafficking of drugs in violation of R.C. 2923.03(A)(2) and R.C. 2925.03(A) and (C)(4)(g), a first degree felony; complicity in the possession of drugs in violation of R.C 2923.03(A)(2) and R.C. 2925.1 1(A) and (C)(4)(f), a first degree felony; and complicity in the possession of criminal tools in violation of R.C. 2923 .03(A)(2) and R.C. 2923.24(A) and (C), a fifth degree felony. The jury also found that the amount of the drugs possessed and sold exceeded 1,000 grams and that the criminal tool possessed was used in the commission of a felony. Appellant was sentenced to 10 years incarceration for complicity in the trafficking of drugs, 10 years incarceration for complicity in the possession of drugs, and 11 months incarceration for complicity in the possession of criminal tools, all sentences to run concurrently. In addition, the court found appellant guilty of the major drug offender specification. . . .

ECF Dkt. #8, Ex. 8 at 3-7.

## II. PROCEDURAL HISTORY

### A. State Court Conviction

The May 2002 term of the Grand Jury for Lucas County, Ohio returned a four count indictment against Petitioner and three other defendants. ECF Dkt. #8, Ex. 1. Petitioner was charged with three counts: (Count 1) trafficking in drugs in violation of O.R.C. §§2925.03(A), (C)(4)(g), with a major drug offender specification pursuant to O.R.C. §2941.1410; (Count 2) possession of drugs in violation of O.R.C. §§2925.11(A), (C)(4)(f), with a major drug offender specification pursuant to O.R.C. §2941.1410; and (Count 4) possession of criminal tools, O.R.C. §§2923.24(A), (C).[1]

On August 6, 2002, Petitioner entered a plea of not guilty to the indictment. ECF Dkt. #8, Ex. 2.

The case proceeded to a jury trial. ECF Dkt. #8, Ex. 3. On April 16, 2003, a jury found Petitioner guilty of all three counts. *Id*.

On April 22, 2003, the trial court sentenced Petitioner to 10 years of imprisonment for each of Counts 1 and 2. ECF Dkt. #8, Ex. 4. The court imposed an 11 month term of imprisonment for Count 4. *Id*. The court ordered all sentences to be served concurrently, for a total sentence of 10 years of imprisonment. *Id*.

### B. Ohio Court of Appeals

On May 7, 2003, Petitioner, through counsel, filed an "amended notice of appeal" to the Ohio Court of Appeals for the Sixth District. ECF Dkt. #8, Ex. 5. On February 9, 2004, Petitioner filed an appellate brief alleging the following assignments of error:

> I. TRIAL COUNSEL WAS INEFFECTIVE AND PREJUDICED THE DEFENDANT BY INDICATING THAT STATE [sic] HAD MET FIFTY ONE PERCENT OF THEIR BURDEN WHEN THE GRAND JURY INDICTED THE DEFENDANT.
>
> II. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE WHEN THE STATE PRESENTS AN "ILLUSION OF GUILT" AS OPPOSED TO PROOF BEYOND A REASONABLE DOUBT ON EACH INDIVIDUAL COUNT OF

---

[1] Count 3 of the indictment did not name Petitioner as a defendant.

-4-

>    THE INDICTMENT.
>
> III.    THE TRIAL COURT ERRED BY NOT GRANTING THE APPELLANT'S MOTION TO SUPPRESS THE SEARCH OF THE HOUSE AND NOT GRANTING STANDING TO MOVE TO SUPPRESS THE CONTENTS OF THE AUTOMOBILE DRIVEN BY A "CO-DEFENDANT."
>
> IV.    THE COURT ERRED BY SENTENCING THE APPELLANT AS A MAJOR DRUG OFFENDER.
>
> V.    THE TRIAL COURT ERRED BY NOT GIVING JURY INSTRUCTION INDICATING THAT MERE ASSOCIATION AND MERE AQUIESSENCE [sic] WITH THE PRINCIPAL OFFENDER IS NOT ENOUGH, THAT THE ACCUSED MUST TAKE A ROLE IN CAUSING THE COMMISSION OF THE OFFENSE.

ECF Dkt. #8, Ex. 6.

On April 29, 2005, the Ohio Court of Appeals affirmed Petitioner's conviction. ECF Dkt. #8, Ex. 8.

### C. Supreme Court of Ohio

On June 28, 2005, Petitioner filed a *pro se* notice of appeal to the Supreme Court of Ohio. ECF Dkt. #8, Ex. 9. Petitioner contemporaneously filed a motion for leave to file a delayed appeal pursuant to Ohio S. Ct. R. P. Rule II § 2A(4)(a). ECF Dkt. #8, Ex. 10.

On August 10, 2005, the court granted Petitioner's motion for leave to file a delayed appeal. ECF Dkt. #8, Ex. 11.

On September 9, 2005, Petitioner, through counsel, filed a memorandum in support of jurisdiction. ECF Dkt. #8, Ex. 12. Petitioner raised the following propositions of law:

> I.    A defendant is deprived of due process of law when the prosecution fails to present sufficient evidence to prove guilt of all essential elements of a crime beyond a reasonable doubt and is convicted in contravention to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution. *Jackson v. Virginia* (1979), 443 U.S. 307.
>
> II.    A trial court violates the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I, of the Ohio Constitution by failing to suppress evidence obtained during an illegal search.
>
> III.    The performance of appellate counsel was deficient, and deprived Mr. McDermott to the right to effective assistance of appellate counsel guaranteed by the 6th and 14th Amendments, U.S. Const., and Sec. 10, Art. I, Ohio Const.

-5-

ECF DKt. #8, Ex. 12 at i.

On December 28, 2005, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question. ECF Dkt. #8, Ex. 14.

### D. Rule 26(B) Motion to Reopen Appeal

On December 8, 2005, Petitioner filed a motion in the Ohio Sixth District Court of Appeals seeking to reopen his appeal pursuant to Ohio R. App. P. 26(B). ECF Dkt. #8, Ex. 15. Petitioner alleged that his appellate counsel was ineffective for failing to ensure that a transcript of the trial courts suppression hearings were included in the record. *Id*. at 6. Petitioner further argued that appellate counsel failed to raise the following assignments of error:

> I. The trial court erred when it denied Mr. McDermott's Motion to Suppress the evidence obtained during the search of the house. Fourth Amendment to the United States Constitution.
>
> II. Trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, for failing to move to suppress the evidence obtained from the illegal search of Mr. McDermott's truck. (2/3/2003 Tr. pp. 5-6; 3/7/2003 Tr. pp. 145-149; 3/14/2003 Tr. pp. 12).

ECF Dkt. #8, Ex. 15 at 6-10.

On March 21, 2006, the Ohio Court of Appeals denied the motion because it was untimely and Petitioner had failed to show good cause for the delay. ECF Dkt. #8, Ex. 16; *see also* Ohio R. App. P. 26(B)(1).

### E. State Petition for Postconviction Relief

On May 22, 2006, petitioner filed a petition for postconviction relief in the Lucas County Court of Common Pleas. ECF Dkt. #8, Ex. 17. Petitioner alleged that his sentence was based upon judicial factfinding and was unconstitutional pursuant to *State v. Foster*, 845 N.E.2d 470 (Ohio 2006) (abrogating portions of Ohio's sentencing statute pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004)). ECF Dkt. #8, Ex. 17.

On June 14, 2006, the State moved to dismiss the petition as untimely pursuant to O.R.C. §2953.21(A)(2). ECF Dkt. #8, Ex. 18. On June 27, 2006, Petitioner filed a "rebuttal brief." ECF Dkt. #8, Ex. 19.

On July 25, 2006, the Lucas County Court of Common Pleas granted the State's motion to dismiss. ECF Dkt. #8, Ex. 20.

### F. Appeal of State Petition for Postconviction Relief

On August 8, 2006, Petitioner filed a notice of appeal to the Sixth District Court of Appeals. ECF Dkt. #8, Ex. 21.

On August 21, 2006, the Sixth District Court of appeals dismissed the appeal as improperly filed because Petitioner captioned the notice of appeal for the Sixth District Court of Appeals instead of the Lucas County Court of Common Pleas. ECF Dkt. #8, Ex. 22.

On September 25, 2006, Petitioner filed another notice of appeal, captioned for the Lucas County Court of Common Pleas. ECF Dkt. #8, Ex. 23. He also filed a motion for leave to file a delayed appeal. ECF Dkt. #8, Ex. 24.

On October 19, 2006, the appellate court denied the motion for delayed appeal as not cognizable in postconviction relief proceedings. ECF Dkt. #8, Ex. 25.

### G. Federal Petition for Writ of Habeas Corpus

On March 28, 2007, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner raises the following grounds for relief:

> Ground One: Petitioner was denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States of America, when counsel failed to raise meritorious constitutional issues and failed to insure that a complete transcript of the trial proceedings was filed.
>
> Ground Two: Petitioner was denied due process of law when he was convicted despite the absence of sufficient evidence of his guilt of each offense. Fifth and Fourteenth Amendments to the Constitution of the United States of America.

ECF Dkt. #1 at 14-16.

On October 3, 2007, Respondent filed a motion to dismiss the petition as time-barred pursuant to 28 U.S.C. §2244(d). ECF Dkt. #8. On March 3, 2008, Petitioner filed a response to Respondent's motion. ECF Dkt. #16.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this Court's review

of the instant matter because Petitioner filed his petition for writ of habeas corpus on March 28, 2007, well after the AEDPA's effective date of April 24, 1996. *See Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). In general, a state prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must comply with the statute of limitations period set forth in 28 U.S.C. § 2244, which provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); *see* 28 U.S.C. § 2244(d)(2). To determine if a state proceeding will toll the statute of limitations, the Sixth Circuit has held that:

> A state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question is not a review 'with respect to the pertinent judgment or claim' within the meaning of 28 U.S.C. § 2244(d)(2), and therefore does not toll the one-year AEDPA statute of limitations.

*Austin v. Mitchell,* 200 F.3d 391, 395 (6th Cir. 1999). Further, the "tolling provision does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that

-8-

has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

The one-year statute of limitations under Section 2244 is subject to equitable tolling when a petitioner's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the petitioner's control. *Dunlap v. United States,* 250 F.3d 1001, 1004 (6th Cir. 2001); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). The Sixth Circuit has stated that "federal courts sparingly bestow equitable tolling." *Graham-Humphreys*, 209 F.3d at 560-61; *Jurado*, 337 F.3d at 642. When determining whether equitable tolling is appropriate, the court must consider: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." *Dunlap*, 250 F.3d at 1008; *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002). These factors are not comprehensive and not all of the factors are relevant in all cases. *Cook*, 295 F.3d at 521. Whether equitable tolling is appropriate is a case-by-case analysis. *Id.* The petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling. *Vroman,* 346 F.3d at 605.

## IV. ANALYSIS

### A. Statement of the issue

The parties agree that the issue in this case is whether Petitioner filed the instant petition within one year of the date on which his judgment became final on direct review. *See* ECF Dkt. #8 at 7; #16 at 2. Petitioner states that "[f]or this case, the applicable limitations period under 28 U.S.C. §2244(d)(1) is contained in subsection (A). . ." ECF Dkt. #16 at 2. Therefore, the undersigned will limit the analysis to the applicability of 28 U.S.C. §2244(d)(1)(A).

Respondent contends that Petitioner's conviction became final on June 13, 2005, the date on which his appeal to the Supreme Court of Ohio was due. ECF Dkt. #8 at 7.

Petitioner contends that "[t]he federal circuit courts have uniformly held that the 'direct review' process includes not only state proceedings on appeal, but also review of a state conviction by the United States Supreme Court via the writ of certiorari." ECF Dkt. #16 at 2. Petitioner further contends that, because the Supreme Court of Ohio granted his motion to file a delayed appeal, he was restored to the same position as when he first possessed the right to file a discretionary appeal. *Id*. at 3. Petitioner concludes that his conviction was not final on direct review until March 28, 2006, the deadline for seeking review from the U.S. Supreme Court through a writ of certiorari. *Id*. at 4.

In this case, Petitioner's appeal in the Sixth District Court of Appeals was denied on April 29, 2005. ECF Dkt. #8, Ex. 8. Petitioner had 45 days, or until June 13, 2005, to file a notice of appeal to the Supreme Court of Ohio. *See* Ohio S. Ct. R. P. Rule II § 2A(1)(a). Petitioner did not file a notice of appeal until June 28, 2005. #8, Ex. 9. Therefore, 15 days elapsed between the time his appeal was due and the time he filed a motion for leave to file a delayed appeal. Therefore, the Court is faced with a very narrow issue:

> When the Supreme Court of Ohio grants a motion for a delayed appeal, does the AEDPA statute of limitations run during time that elapses between the deadline for filing a notice of appeal to the Supreme Court of Ohio and the date on which Petitioner files a motion for delayed appeal?

Petitioner contends that the AEDPA statute of limitations does not run during that time because, when the Supreme Court of Ohio grants a motion for leave to file a delayed appeal, a defendant is restored to the same position as when he first possessed the right to file a discretionary appeal. ECF Dkt. #16 at 3.

### B. Synopsis of the applicable law

The Sixth Circuit has dealt with a similar issue in a case where a petitioner had filed a motion for leave to file a delayed appeal 52 days after the Court of Appeals' decision: "Such a motion for delayed appeal, *even if granted*, does not restart the statute of limitations, but if properly filed, it does toll the statute during the time the motion was pending." *DiCenzi v. Rose*, 452 F.3d 465, 468-69 (6th Cir. 2006)(emphasis added); *see also Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) ("We agree with this rationale and hold, as did the district court, that although the filing of the motion for

-10-

a delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion."); *Pratts v. Hurley*, No. 5:04CV1875, 2007 WL 1577794 at *3 (N.D.Ohio May 31, 20070, unreported ("the delayed appeal did not re-start the statute of limitations.").

Petitioner contends that *Searcy* does not apply to the case at bar because, in *Searcy*, the Sixth Circuit dealt with a case where a motion for a delayed appeal had been denied. ECF Dkt. #16 at 8. Petitioner further contends that *DiCenzi* should also be disregarded because the *DiCenzi* court based its conclusion on an improper reading of *Searcy*. *Id*. at 9. Petitioner explains that the *DiCenzi* court was "greatly mistaken, as the *Searcy* court's opinion was merely related to motions for delayed appeals that are denied. *Id*.

In evaluating Petitioner's arguments, it is necessary to closely examine the *Searcy* and *DiCenzi* opinions and to determine their scope of applicability.

In *Searcy*, a man convicted of robbery appealed his conviction to the Ohio Court of Appeals. *Searcy*, 246 F.3d at 516. The appellate court affirmed his conviction, and three years later, he filed a motion for leave to file a delayed appeal in the Supreme Court of Ohio. *Id*. The Supreme Court of Ohio denied the motion, and the defendant filed a petition in a United States District Court for the Southern District of Ohio under 28 U.S.C. §2254. *Id*. The district court dismissed the petition as time-barred, and the Sixth Circuit affirmed. *Id*. at 517, 518-19. The court stated that "although the filing of the motion for a delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion." *Id*.

In *DiCenzi*, a man pleaded guilty to aggravated vehicular homicide and aggravated vehicular assault. *DiCenzi*, 452 F.3d at 466. At sentencing, the trial judge failed to inform the defendant of his right to appeal his sentence. *Id*. at 467. Upon contacting the public defender's office and learning of his right to appeal, the defendant filed a motion for a delayed appeal. *Id*. The Ohio Court of Appeals denied the motion. *Id*. The petitioner then filed a Rule 26 motion, which the Court of Appeals denied. *Id*. Next, the petitioner filed a motion for a delayed appeal in the Supreme Court of Ohio. *Id*. The court granted leave to file the appeal, but it ultimately dismissed the appeal.

-11-

*Id*. Finally, the petitioner filed a 28 U.S.C. § 2254 petition, raising four grounds for relief: (1) a Sixth Amendment violation arising from his attorney's failure to notify him of his appeal rights; and also three due process violations arising from (2) the trial court's failure to afford him the required protections of Ohio law in imposing a maximum sentence, (3) the trial court's "failure to advise him of his appellate rights," and (4) the state appellate court's "refus[al] to allow him to file a delayed appeal." *Id*. The district court dismissed the petition as untimely. *Id*.

The Sixth Circuit looked to the text of 28 U.S.C. §2244(d)(1). *Id*. at 467-68. The court determined that the petitioner's fourth claim, pertaining to the state appellate court's refusal to allow him to file a delayed appeal, was governed by 28 U.S.C. §2244(d)(1)(D). *Id*. at 468. The court concluded that the petitioner had one year from the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence. *Id*. The court went on to conclude that Petitioner's motion for a delayed appeal did not restart the statute of limitations, even though it was granted; it merely tolled the AEDPA clock. *Id*.

The *DiCenzi* court then looked to the errors at the trial level and determined that, under 28 U.S.C. §2244(d)(1)(A), the AEDPA statute of limitations began running after the conclusion of the available period for seeking direct review. *Id*. at 469. The court then remanded the case to the district court to determine if equitable tolling applied. *Id*. at 470.

Petitioner contends that *DiCenzi* is distinguishable and the plain language of 28 U.S.C. §2244(d)(1)(A) dictates that his conviction did not become final until the Supreme Court of Ohio entered its judgment in his case. ECF Dkt. #16 at 8. Petitioner is correct in asserting that the *DiCenzi* court analyzed how a motion for delayed appeal that is granted would affect the running of a habeas statute under §2244(d)(1)(D), as opposed to §2244(d)(1)(A). ECF Dkt. #16 at 9 Petitioner fails to acknowledge that, in section II(C) of the *DiCenzi* opinion, the court held that, under 28 U.S.C. §2244(d)(1)(A), the statute of limitations for challenging errors at the trial level began running after the conclusion of his available period for seeking direct review. *DiCenzi*, 452F.3d at 469-70. The court held that his statute of limitations had expired, even though the Supreme Court of Ohio had granted leave to file a delayed appeal. *See id*. Although the *DiCenzi*

-12-

court did not repeat its conclusion in section II(C) that a motion for delayed appeal, *even if granted*, does not restart the statute of limitations, the court apparently applied that rule of law in determining that the petitioner's statute of limitations began running at the expiration of his time for seeking direct review. Therefore, Petitioner's interpretation is incorrect; the *DiCenzi* court did hold, albeit indirectly, that a motion for delayed appeal does not restart the AEDPA statute of limitations under §2244(d)(1)(A).

Petitioner also contends that *DiCenzi* is not authoritative because it is based on a misinterpretation of *Searcy*. ECF Dkt. #16 at 9. That argument is not compelling because the *DiCenzi* court's statement is itself an embodiment of Sixth Circuit law, even if it is arguably misled. It is not the province of the District Court to review and reverse the Court of Appeals. Rather, the District Court is obligated to apply precedent dictated by the higher courts. "The district courts in this circuit are, of course, bound by pertinent decisions of this Court [of Appeals] even if they find what they consider more persuasive authority in other circuits." *Timmreck v. U.S.*, 577 F.2d 372, n. 6 (6th Cir. 1978) overruled on other grounds by *U. S. v. Timmreck*, 441 U.S. 780 (1979).

Consequently, the undersigned finds that *DiCenzi* is applicable and recommends that the Court dismiss the petition as time-barred.

Should the Court determine that *Dicenzi* is not applicable, it must then interpret the text of 28 U.S.C. §2244(d)(1). The undersigned notes that "the limitation period shall run from the latest of" the events enumerated in subsections A, B, C, or D. The question is whether the phrase "latest of" applies to the events contained within subsection A, " the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." The undersigned finds the Fifth Circuit's interpretation of the statute to be persuasive:

> The language of § 2244(d)(1)(A) provides that a decision becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." We previously held that direct review includes a petition for writ of certiorari to the Supreme Court. Therefore, the "conclusion of direct review" is when the Supreme Court either rejects the petition for certiorari or rules on its merits. If the conviction does not become final by the conclusion of direct review, it becomes final by "the expiration of the time for seeking such review." We previously held that this includes the ninety days allowed for a petition to the Supreme Court following the entry of judgment by the state court of last resort. *If the defendant stops the appeal process*

-13-

> *before that point, the conviction becomes final when the time for seeking further direct review in the state court expires.*

*Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (emphasis added) (footnotes omitted). The *Roberts* court's construction is consistent with the legislative purpose to impose some finality on state convictions. It is difficult to believe that Congress intended to allow prisoners an unlimited amount of time to seek review. *See Searcy*, 246 F.3d at 519, where, in the context of a denied motion for delayed appeal, the Sixth Circuit stated:

> This is a position that we cannot endorse, because it would effectively eviscerate the AEDPA's statute of limitations. Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.

It is reasonable to interpret §2244 to mean that direct review ends either when the defendant's appeals are exhausted or when the time for seeking further direct review in the state court expires; but in either case, the conviction must become final at some point. The state's ability to exercise its discretion and afford an extraordinary remedy should not operate to extend the potential time period for filing §2254 petitions ad infinitum.

### C. Tolling calculations

#### (i) Statutory tolling

Since *DiCenzi* applies, it is clear that Petitioner's AEDPA statute of limitations ran from June 14, 2005 (the day after his notice of appeal to the Supreme Court of Ohio was due) until June 28, 2005, when he filed a motion for leave to file a delayed appeal. Therefore, 14 days of Petitioner's AEDPA statute of limitations expired before he filed a motion for leave to file a delayed appeal.

Petitioner's AEDPA statute of limitations was tolled while his motion was pending in the Supreme Court of Ohio. On December 28, 2005, the Supreme Court of Ohio dismissed Petitioner's appeal. ECF Dkt. #8, Ex. 14. Beginning the next day, he had 90 days to seek review from the United States Supreme Court. *See* S.Ct. R. 13(1) ("A petition for a writ of certiorari seeking review

of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review.")

Respondent contends, however, that these 90 days do not toll the statute of limitations because a delayed appeal is a collateral appeal, which is not entitled to a 90 day tolling under *Lawrence v. Florida*, 127 S.Ct. 1079, 1083 (2007). ECF Dkt. #8 at 8. Because the undersigned determines below that Petitioner's AEDPA statute of limitations expired regardless of whether he was entitled to 90 days tolling, it is not necessary to reach a conclusion on the issue. Therefore, the undersigned will assume, arguendo, that Petitioner was entitled to 90 days of tolling. Under that assumption, his appeal became final on March 29, 2006, and his AEDPA statute of limitations began running the next day on March 30, 2006. Absent tolling, the AEDPA statute of limitations would expire on March 15, 2007 (one year minus 14 days).

Petitioner did not properly file any applications for collateral review that would entitle him to statutory tolling. Petitioner's 26(B) application and state petition for postconviction relief were both untimely. *See* ECF Dkt. #8, Ex. 16, Ex. 20. His appeal from the trial court's denial of his state petition for postconviction relief was dismissed because it was not properly captioned, and his subsequent appeal was untimely. *See* ECF Dkt. #8, Ex. 22, Ex. 25. Therefore, Petitioner's AEDPA statute of limitations expired on March 15, 2007.

Petitioner filed the instant Petition on March 28, 2007 – 13 days late. Therefore, the petition is untimely and should be dismissed in its entirety.

### (ii) **Equitable tolling**

Petitioner does not claim lack of notice or constructive knowledge of the filing requirement. Rather, Petitioner contends that he is entitled to equitable tolling because he diligently pursued his rights and no prejudice would be imposed upon Respondent. ECF Dkt. #16 at 10-12. Petitioner's claim of equitable tolling lacks merit because Petitioner argues only about his diligent pursuit of claims at the state level. *See id.* He offers no explanation for the delay in filing the instant petition.

Petitioner has pointed to nothing that would have prevented him, in exercising diligence, from filing the instant petition two weeks earlier. In other words, Petitioner has not demonstrated an exercise of diligence at the federal level. Petitioner would have the Court pin the blame solely on appellate counsel for his lack of communication during direct appeal; however, Petitioner was represented by the Ohio Public Defender's Office well before the expiration of the AEDPA statute of limitations.

The Sixth Circuit has explicitly held that a mere showing of diligence at the state level is insufficient to merit equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 404 (6th Cir. 2004) (delay of seven months between conclusion of state postconviction proceedings and filing of federal habeas petition demonstrated lack of diligence); *Fuller v. Thomas*, 110 Fed.Appx. 496, 499 (6th Cir. Aug. 24, 2004) ("As an initial matter, Fuller focuses on his diligence in pursuing Ohio state court relief, not federal habeas relief. His equitable tolling argument fails because he did not provide any reasons for tolling AEDPA."). Since Petitioner has made no showing of the other factors establishing cause for his delay and the need for equitable tolling, the Court need not consider prejudice. *Id*. at 1009.

## V. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court GRANT Respondent's motion and DISMISS the instant petition in its entirety with prejudice.

DATE: April 16, 2008          *s/ George J. Limbert*
                              GEORGE J. LIMBERT
                              UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).