UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN MCDERMOTT, | ) | Case No. 3:07CV901 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| JESSIE WILLIAMS[1], Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Respondent. | ) | |

Pursuant to 28 U.S.C. §2254, Petitioner Shawn McDermott, a prisoner in custody at the Oakwood Correctional Facility, seeks review of his Lucas County Ohio Court of Common Pleas conviction for complicity in trafficking drugs in violation of Ohio Revised Code ("O.R.C") §2925.03, possession of drugs in violation of O.R.C. §2925.11, and possession of criminal tools in violation of O.R.C. §2923.24.  ECF Dkt. #1.  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice:

## I.  SYNOPSIS OF THE FACTS

The Sixth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct" unless one of eight exceptions[2]

---

[1]    Petitioner is now housed at Oakwood Correctional Facility, where Jessie Williams is the warden. *See http://www.drc.ohio.gov/OffenderSearch/Search.aspx* (search for Shawn McDermott).  "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . ." *Rumsfeld v. Padilla,* 542 U.S. 426, 435 (2004). Accordingly, the Petition should be amended to name Jessie Williams as respondent.

[2]    (1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

applies, and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(d)(1)(1)-(8), (e)(1); *Jefferson v. Upton*, 130 S.Ct. 2217, 2218 (2010); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).  As set forth by the Sixth District Court of Appeals, the facts are:

> On July 26, 2002, appellant was indicted and charged with trafficking in drugs, possession of drugs and possession of criminal tools. The trafficking and possession of drugs counts included specifications that appellant was a major drug offender. In addition, Gilberto Moldonado, Julieta Rodriguez, Jesus Padilla-Montano and Antonia Herdandez-Cruz were also charged in the indictment. The charges were the result of an investigation into possible drug trafficking at 569 Woodville Road, in Toledo, Lucas County, Ohio.

> Prior to July 15, 2002, officers of the Toledo Metro Drug Task Force and the Toledo Police Department received information from the FBI that Moldonado was a suspect in a drug trafficking investigation in Detroit, that he might be the subject of a federal grand jury subpoena as part of that investigation and that he was then living at 569 Woodville Road, in Toledo. Based on the information they received, the officers believed that Moldonado was using the Toledo house as a stash house and to break down loads of cocaine. On or about July 1, 2002, officers began intermittent surveillance of the house. The officers then received information from an informant that Moldonado had been at the house approximately one week before July 15, 2002, where the informant observed a large number of kilos of cocaine.

> In the early morning hours of July 15, 2002, officers of the drug task force conducted a garbage pull at 569 Woodville Road, in which they removed garbage that had been placed at the curb and searched it. In searching that garbage, officers discovered a kilo wrapper with cocaine residue on it and a bottle of Inositol. Inositol is a dietary supplement that is regularly used by drug dealers to cut down cocaine to a less pure form in order to prepare it for street-level sales. In addition, the number "135" was written on the kilo wrapper. Detective Sean Jones testified that a kilo wrapper could contain about $21,270 worth of cocaine. The officers continued to surveil the home. At approximately 8:00 a.m., the officers witnessed a white male take two garbage bags out of the house and place them on the curb for collection just as the garbage truck arrived. The officers testified that the white male, who was subsequently

---

> (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

> (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

> (7) that the applicant was otherwise denied due process of law in the State court proceeding;

> (8) or unless ... the Federal court on a consideration of [the relevant] part of the record as a whole concludes that such factual determination is not fairly supported by the record.

> § 2254(d).

identified as appellant, appeared to be "trash conscious," which the officers described as looking both ways before walking to the garbage truck.

As the officers continued their surveillance of the house, they saw a white Dodge Intrepid with Michigan license plates pull into the driveway and park at the rear of the house. The officers were only able to observe the activity at the house from approximately four houses away, but from that distance they saw what appeared to be people putting bags into the trunk. Approximately 45 minutes later the Intrepid left the house. Officers then followed the car and, although they did observe the Intrepid commit a traffic violation, they pulled the car over for an investigation of drug trafficking. When Detective Jones approached the passenger's side open window of the car, he detected a very strong odor of cocaine. Officers then looked into the back seat compartment of the car and noticed a white opaque bag with a tied top bulging from its contents. The bag contained rectangular shaped bundles that could be seen through the sides of the bag, and through the top of the bag officers could see that the bundles were wrapped in green cellophane plastic. Officer Lou Vasquez testified that the bundles appeared to be a large sum of money, which he and the other officers suspected were the proceeds from drug trafficking. Officers then took the driver of the car, Jesus Padilla-Montano, and the front seat passenger, Antonia Hernandez-Cruz, into custody. It was ultimately determined that the cash found in the car totaled $278,990.

Officer Duane Poole testified that based on the evidence obtained from the garbage pull, he requested a search warrant for the 569 Woodville Road property. The affidavit also included information learned from the search of the Intrepid. When the warrant was returned, officers executed a search of the home and cars on the property. Initially, when the officers entered the home, they found appellant asleep on the living room couch. They removed him from the couch and placed him on the floor. They also seized Gilberto Moldonado and Julieta Rodriguez. It is noteworthy that the living room was quite small, approximately 12 feet by 12 feet. Several items of evidence were found in the immediate vicinity of appellant. Approximately four feet from appellant was a shoe box that contained $9,510 in cash; green cellophane plastic, identical to the plastic that bound the bundles of cash found in the Intrepid, was found in plain view about two to three feet from appellant; and a bag full of hundreds of rubber bands was found on the floor with the cellophane. The bag of rubber bands had fallen to the floor and some of the rubber bands had spilled onto the floor. Detective Kathy Brewer testified that the money found in the Intrepid was wrapped in rubber bands first and then wrapped in the green cellophane plastic. On the window sill in the living room, about three feet from appellant, officers found a ball of aluminum foil that contained a chunk of powder cocaine. Finally, Detective Jones found a ledger in the living room, but he could not be certain how far the ledger was from appellant. The ledger contained the adding and subtracting of large sums. In particular, the ledger contained the sum of $21,750, which Detective Jones stated was very close to the going rate for a kilogram of cocaine.

Upon searching the house, officers found two kilograms of cocaine under the basement stairs, a rerock machine in the basement, and a gallon of acetone near the rerock machine. A rerock machine is a homemade device used to reform cocaine once it has been diluted with additives. The machine reshapes the cocaine into brick form so that a drug trafficker can resell what appears to be an original kilogram of cocaine but which is in actuality a diluted product. Acetone is used in the rerock process. Detective Lou Vasquez testified that once the two kilos of cocaine were cut and distributed on the street, they were worth close to $200,000 per kilo. Officers further testified that the house was scantily furnished and there was no refrigerator in the kitchen. The kitchen did contain a microwave oven and a scale, which both contained

cocaine residue. In addition to the house, officers searched two cars that were in the driveway of 569 Woodville Road. A 1995 Chevy pick-up truck registered to appellant contained a number of documents including: a receipt from Gillman, an auto mechanics shop, in Edna, Texas, listing appellant's name and showing that $283.47 cash was paid for repairs to a 1996 Chevy Tahoe on June 20, 2002; a Texas certificate of title for the 1995 Chevy pick up truck showing that title was transferred to appellant on June 24, 2002; an invoice for the truck showing that the price of the truck was $5,400 and that it was paid for in cash; a receipt from Complete Car Care All Tune and Lube in Louisville, Kentucky, for repairs to a 1995 Chevy pickup in appellant's name and dated July 1,2002; and an Enterprise Rent-A-Car agreement from a rental company in Louisville, Kentucky, dated June 27, 2002, made out to Gilberto Moldonado and listing appellant as an additional driver. The Enterprise contract states that the car is to be returned by June 28, 2002. It also states that the mileage on the car when it was taken was 36,253 and that when it was returned was 37,071. Accordingly, appellant and Maldonado put approximately 800 miles on the car during the short time that they had it.

Based on the evidence presented at the trial below, the jury convicted appellant of complicity in the trafficking of drugs in violation of R.C. 2923.03(A)(2) and R.C. 2925.03(A) and (C)(4)(g), a first degree felony; complicity in the possession of drugs in violation of R.C 2923.03(A)(2) and R.C. 2925.1 1(A) and (C)(4)(f), a first degree felony; and complicity in the possession of criminal tools in violation of R.C. 2923 .03(A)(2) and R.C. 2923.24(A) and (C), a fifth degree felony. The jury also found that the amount of the drugs possessed and sold exceeded 1,000 grams and that the criminal tool possessed was used in the commission of a felony. Appellant was sentenced to 10 years incarceration for complicity in the trafficking of drugs, 10 years incarceration for complicity in the possession of drugs, and 11 months incarceration for complicity in the possession of criminal tools, all sentences to run concurrently. In addition, the court found appellant guilty of the major drug offender specification. . . .

ECF Dkt. #8, Ex. 8 at 3-7.  With regard to most of the factual findings, the undersigned sees no reason to believe that one of the exceptions enumerated in §2254(d) applies here.  Notably, Petitioner and Respondent agree on the  characterization of the facts. See ECF Dkt. #39 at 1.

However, the appellate court found that "When the warrant was returned, officers executed a search of the home and cars on the property."  ECF Dkt. #8 at 5.  As discussed in Section IV(A), below, it appears that there was a dispute as to whether the warrant had been issued before the search began.  Further, neither party has directed the Court to the trial court's ruling on the issue of the timing of the warrant.  Thus, pursuant to §2254(d)(1), the facts related to the timing of the search of the house should not be afforded a presumption of correctness.

## II.    PROCEDURAL HISTORY

Although the undersigned has summarized the procedural history of this case in an earlier report and recommendation, the undersigned will reiterate that summary here for the Court's convenience.

### A.    State Court Conviction

The May 2002 term of the Grand Jury for Lucas County, Ohio returned a four count indictment against Petitioner and three other defendants.  ECF Dkt. #8, Ex. 1.  Petitioner was charged with three counts: (Count 1) trafficking in drugs in violation of O.R.C. §§2925.03(A), (C)(4)(g), with a major drug offender specification pursuant to O.R.C. §2941.1410; (Count 2) possession of drugs in violation of O.R.C. §§2925.11(A), (C)(4)(f), with a major drug offender specification pursuant to O.R.C. §2941.1410; and (Count 4) possession of criminal tools, O.R.C. §§2923.24(A), (C).[3]

On August 6, 2002, Petitioner entered a plea of not guilty to the indictment.  ECF Dkt. #8, Ex. 2.

The case proceeded to a jury trial.  ECF Dkt. #8, Ex. 3.  On April 16, 2003, a jury found Petitioner guilty of all three counts.  *Id.*

On April 22, 2003, the trial court sentenced Petitioner to 10 years of imprisonment for each of Counts 1 and 2.  ECF Dkt. #8, Ex. 4.  The court imposed an 11 month term of imprisonment for Count 4.  *Id.*  The court ordered all sentences to be served concurrently, for a total sentence of 10 years of imprisonment.  *Id.*

### B.    Ohio Court of Appeals

On May 7, 2003, Petitioner, through counsel, filed an "amended notice of appeal" to the Ohio Court of Appeals for the Sixth District.  ECF Dkt. #8, Ex. 5.  On February 9, 2004, Petitioner filed an appellate brief alleging the following assignments of error:

---

[3]    Count 3 of the indictment did not name Petitioner as a defendant.

I.      TRIAL COUNSEL WAS INEFFECTIVE AND PREJUDICED THE DEFENDANT BY INDICATING THAT STATE [sic] HAD MET FIFTY ONE PERCENT OF THEIR BURDEN WHEN THE GRAND JURY INDICTED THE DEFENDANT.

II.     APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE WHEN THE STATE PRESENTS AN "ILLUSION OF GUILT" AS OPPOSED TO PROOF BEYOND A REASONABLE DOUBT ON EACH INDIVIDUAL COUNT OF THE INDICTMENT.

III.    THE TRIAL COURT ERRED BY NOT GRANTING THE APPELLANT'S MOTION TO SUPPRESS THE SEARCH OF THE HOUSE AND NOT GRANTING STANDING TO MOVE TO SUPPRESS THE CONTENTS OF THE AUTOMOBILE DRIVEN BY A "CO-DEFENDANT."

IV.    THE COURT ERRED BY SENTENCING THE APPELLANT AS A MAJOR DRUG OFFENDER.

V.     THE TRIAL COURT ERRED BY NOT GIVING JURY INSTRUCTION INDICATING THAT MERE ASSOCIATION AND MERE AQUIESSENCE [sic] WITH THE PRINCIPAL OFFENDER IS NOT ENOUGH, THAT THE ACCUSED MUST TAKE A ROLE IN CAUSING THE COMMISSION OF THE OFFENSE.

ECF Dkt. #8, Ex. 6.

On April 29, 2005, the Ohio Court of Appeals affirmed Petitioner's conviction.  ECF Dkt. #8, Ex. 8.

**C.**     **Supreme Court of Ohio**

On June 28, 2005, Petitioner filed a *pro se* notice of appeal to the Supreme Court of Ohio. ECF Dkt. #8, Ex. 9.  Petitioner contemporaneously filed a motion for leave to file a delayed appeal pursuant to Ohio S. Ct. R. P. Rule II § 2A(4)(a).  ECF Dkt. #8, Ex. 10.

On August 10, 2005, the court granted Petitioner's motion for leave to file a delayed appeal. ECF Dkt. #8, Ex. 11.

On September 9, 2005, Petitioner, through counsel, filed a memorandum in support of jurisdiction.  ECF Dkt. #8, Ex. 12.  Petitioner raised the following propositions of law:

I.      A defendant is deprived of due process of law when the prosecution fails to present sufficient evidence to prove guilt of all essential elements of a crime beyond a reasonable doubt and is convicted in contravention to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution. *Jackson v. Virginia* (1979), 443 U.S. 307.

II.     A trial court violates the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I, of the Ohio Constitution by failing to suppress evidence obtained during an illegal search.

III.     The performance of appellate counsel was deficient, and deprived Mr. McDermott to the right to effective assistance of appellate counsel guaranteed by the 6th and 14th Amendments, U.S. Const., and Sec. 10, Art. I, Ohio Const.

ECF DKt. #8, Ex. 12 at i.

On December 28, 2005, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question.  ECF Dkt. #8, Ex. 14.

**D.     Rule 26(B) Motion to Reopen Appeal**

On December 8, 2005, Petitioner filed a motion in the Ohio Sixth District Court of Appeals seeking to reopen his appeal pursuant to Ohio R. App. P. 26(B).  ECF Dkt. #8, Ex. 15.  Petitioner alleged that his appellate counsel was ineffective for failing to ensure that a transcript of the trial courts suppression hearings were included in the record.  *Id*. at 6.  Petitioner further argued that appellate counsel failed to raise the following assignments of error:

I.     The trial court erred when it denied Mr. McDermott's Motion to Suppress the evidence obtained during the search of the house.  Fourth Amendment to the United States Constitution.

II.     Trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, for failing to move to suppress the evidence obtained from the illegal search of Mr. McDermott's truck.  (2/3/2003 Tr. pp. 5-6; 3/7/2003 Tr. pp. 145-149; 3/14/2003 Tr. pp. 12).

ECF Dkt. #8, Ex. 15 at 6-10.

On March 21, 2006, the Ohio Court of Appeals denied the motion because it was untimely and Petitioner had failed to show good cause for the delay.  ECF Dkt. #8, Ex. 16; *see also* Ohio R. App. P. 26(B)(1).

**E.     State Petition for Postconviction Relief**

On May 22, 2006, petitioner filed a petition for postconviction relief in the Lucas County Court of Common Pleas.  ECF Dkt. #8, Ex. 17.  Petitioner alleged that his sentence was based upon judicial factfinding and was unconstitutional pursuant to *State v. Foster*, 845 N.E.2d 470 (Ohio

2006) (abrogating portions of Ohio's sentencing statute pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004)).  ECF Dkt. #8, Ex. 17.

On June 14, 2006, the State moved to dismiss the petition as untimely pursuant to O.R.C. §2953.21(A)(2).  ECF Dkt. #8, Ex. 18.  On June 27, 2006, Petitioner filed a "rebuttal brief."  ECF Dkt. #8, Ex. 19.

On July 25, 2006, the Lucas County Court of Common Pleas granted the State's motion to dismiss.  ECF Dkt. #8, Ex. 20.

**F.      Appeal of State Petition for Postconviction Relief**

On August 8, 2006, Petitioner filed a notice of appeal to the Sixth District Court of Appeals. ECF Dkt. #8, Ex. 21.

On August 21, 2006, the Sixth District Court of appeals dismissed the appeal as improperly filed because Petitioner captioned the notice of appeal for the Sixth District Court of Appeals instead of the Lucas County Court of Common Pleas.  ECF Dkt. #8, Ex. 22.

On September 25, 2006, Petitioner filed another notice of appeal, captioned for the Lucas County Court of Common Pleas.  ECF Dkt. #8, Ex. 23.  He also filed a motion for leave to file a delayed appeal.  ECF Dkt. #8, Ex. 24.

On October 19, 2006, the appellate court denied the motion for delayed appeal as not cognizable in postconviction relief proceedings.  ECF Dkt. #8, Ex. 25.

**G.      Federal Petition for Writ of Habeas Corpus**

On March 28, 2007, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

> Ground One:  Petitioner was denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States of America, when counsel failed to raise meritorious constitutional issues and failed to insure that a complete transcript of the trial proceedings was filed.
>
> Ground Two:  Petitioner was denied due process of law when he was convicted despite the absence of sufficient evidence of his guilt of each offense. Fifth and Fourteenth Amendments to the Constitution of the United States of America.

ECF Dkt. #1 at 14-16.

On October 3, 2007, Respondent filed a motion to dismiss the petition as time-barred pursuant to 28 U.S.C. §2244(d).  ECF Dkt. #8.  On March 3, 2008, Petitioner filed a response to Respondent's motion.  ECF Dkt. #16.

On April 16, 2008, the undersigned recommended that the Court dismiss the petition as time-barred.  ECF Dkt. #17.  On June 26, 2008, the Court adopted the report and recommendation and dismissed the case.  ECF Dkt. ## 26, 27.  On July 27, 2008, Petitioner filed a notice of appeal.  ECF Dkt. #27.  On a joint motion of the parties, the Sixth Circuit Court of Appeals remanded the case because this Court did not have the benefit of a recent United States Supreme Court decision in *Jimenez v. Quarterman*, 129 S. Ct. 681 (2009).

On April 21, 2010, Respondent filed a return of writ.  ECF Dkt. #35.  On August 20, 2010, Petitioner filed a traverse.  ECF Dkt. #39.

## III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

The parties now agree that the instant petition is timely.  ECF Dkt. #35 at 31; ECF Dkt. #39 at 3.  Respondent contends that a portion of Ground One is procedurally defaulted.  ECF Dkt. #35 at 12-17.  Petitioner has withdrawn that portion of Ground One, as discussed below.  ECF Dkt. #39 at n. 1.

## IV.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or

laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.    Decisions of lower federal courts may not be considered.

B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

-10-

C.     The state court decision may be overturned only if:

    1.     It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

    2.     the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

    3.     'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

    4.     the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.     Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

-11-

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.    ANALYSIS
### A.    GROUND ONE

Petitioner contends that appellate counsel was ineffective for not raising an ineffective assistance of trial counsel claim related to evidence obtained from a search of his truck.  ECF Dkt. #1 at 14.  Respondent contends that this portion of Ground One is procedurally defaulted.  ECF Dkt. #35 at 12-17.  Petitioner has since withdrawn this portion of Ground One.  ECF Dkt. #39 at n. 1.  However, to avoid confusion, the undersigned notes that trial counsel did raise the issue of whether Petitioner's truck was improperly searched.  ECF Dkt. #35 Trial Transcript (hereinafter "Tr.")  at 370-74, 458 (*discussed below*).  Nevertheless, the undersigned will not consider this portion of Ground One because Petitioner has withdrawn it.

Petitioner also contends that appellate counsel was ineffective for failing to order and file transcripts of the suppression hearings for inclusion in the appellate record.  Before considering this claim, it is helpful to review the procedural history pertaining to the suppression issues.

On September 3, 2002, Petitioner Moved to suppress evidence derived from the execution of a search warrant at 569 Woodville Road., Toledo, Ohio ("569 Woodville Road"), on July 15,

-12-

2002.  ECF Dkt. #35, Ex. A.  In that motion, Petitioner sought to incorporate his co-defendants'
arguments and to exclude evidence obtained during the stop of the Dodge Intrepid.  ECF Dkt. #35,
Ex. A at 8, n. 3.  The state filed objections to Petitioner's claim of standing with respect to the Dodge
Intrepid and the premises at 569 Woodville Road.  ECF Dkt. #35,  Ex. B.  Petitioner then filed a
response asserting that he had standing with respect to the 569 Woodville Road premises as an
overnight guest, but he conceded that he did not have a direct  expectation of privacy in the Dodge
Intrepid.  ECF Dkt. #35, Ex. C.

    The trial court conducted a suppression hearing on November 14, 2002.  ECF Dkt. #35,
Attach. 3.  Following the hearing, Petitioner filed a supplemental motion to suppress, contending that
the search of the 569 Woodville Road premises may have occurred before the warrant was issued
and was therefore a warrantless search.  ECF Dkt. #35, Ex. D.  The state filed an brief in opposition
and Petitioner filed a supplemental brief.  ECF Dkt. #35, Ex. E, F.  On March 7, 3003, the trial court
held a suppression hearing to determine whether the search of 569 Woodville Road occurred before
or after the warrant was issued.  ECF Dkt. #35, Attach. 5 at 143.

    On March 14, 2003, the trial judge held another hearing.  ECF Dkt. #35, Attach. 6.  The court
denied the motion regarding the Intrepid.  *Id*. at 49.  The court also determined that probable cause
existed in the search warrant affidavit and the search of the house was valid "assuming that the
execution of the warrant was appropriate in view of the timing, obtaining of the warrant, et cetera."
*Id*. at 39-40.  The trial judge went on to state that  the affidavit supported the issuance of the warrant,
"setting aside" or "assuming" the issue of whether or not the execution of the warrant was
appropriate in relation to the timing of its issuance.  *Id*. at 48-49.  Finally, the court stated that the
motion to suppress evidence seized from the house was not "complete" because the trial court needed
more evidence.  *Id*.  Therefore, the court took the motion under advisement.  *Id*.; *see also*
http://lcapps.co.lucas.oh.us/onlinedockets/Docket.aspx?STYPE=1&PAR=CR0200202425-000&

STARTDATE=1/1/2000&ENDDATE=1/1/2010&PARTY=0 *last visited* September 21, 2010 (Lucas
County Court of Common Pleas Docket ) (first entry for 3/14/2003 "Oral arguments heard regarding
the timing of the issuance of the search warrant. Matter taken under advisement."); *see Ashipa v.*

-13-

*Warden, Chillicothe Correctional Inst.*, No. 1:08XC879, 2009 WL 3152840 at *3 (S.D.Ohio Sept. 30, 2009) (taking judicial notice of online docket records available to the public via the internet).

Neither Respondent nor Petitioner has directed the Court to a final ruling on the motion to suppress related to the timing of the execution of the warrant on 569 Woodville Road.  *See* ECF Dkt. #35 at 6; #39 at 1-2.  Upon review of the state court docket, the March 14, 2003 suppression hearing transcript, and the trial transcript, the undersigned does not see any indication of a ruling on this motion.

When trial began, the trial judge indicated that only two motions were pending, a motion in limine and a motion to dismiss.  ECF Dkt. #35, Attach 8.  The trial judge made no mention of a ruling on the suppression motion that he had taken under advisement.  The motion in limine related to evidence seized from motor vehicles that were searched at 569 Woodville Road.  *Id*. at 5. However, the trial judge explicitly noted that he was dealing with an evidentiary issue and not a suppression issue.  *Id*. at 20.  The trial judge noted that Petitioner had not filed a suppression motion related to those vehicles and the motion in limine involved determining only whether the evidence seized was admissible from an evidentiary perspective.  *Id*.  at 18.  Having considered the potential relevance and inflammatory nature of the evidence, the judge ruled that it was admissible.  *Id*. at 5-21.  Defense counsel also moved to exclude the search warrant affidavit on the grounds of hearsay, and the court granted the motion.  *Id*. at 24-27.  The court did not mention a ruling on the suppression motion related to the search warrant.

On appeal, counsel stated that the "crux of [his] assignment of error [was] that the court should have allowed the defendant standing to move to suppress the car search and the court should have suppressed the search of the house."  ECF Dkt. #8, Ex. 6 at 13.  On appeal to the Supreme Court of Ohio, Petitioner, represented by a different attorney, contended that appellate counsel was ineffective because he forfeited appellate review of a claimed constitutional violation.  ECF Dkt. #8, Ex. 12 at 12.  Specifically, Petitioner alleged that "But for appellate counsel's failures, a different outcome would have resulted as the search of Mr. McDermott's pick-up was conducted without probable cause and thus, the evidence was illegally obtained."  *Id*.

Petitioner then filed a delayed application to reopen his appeal, contending that counsel failed to argue that the search of Mr. McDermott's truck was not supported by probable cause.  ECF Dkt. #8, Ex. 15 at 6.  Petitioner specifically contended that appellate counsel's failure to ensure that transcripts of the suppression hearings held on March 7, 10, and 14, 2003 prejudiced him because the appellate court presumed the validity of the trial court's rulings and his constitutional claim was thereby forfeited. *Id*. at 6-7.  Petitioner concluded that "[b]ut for appellate counsel's ineffectiveness, the outcome of Mr. McDermott's appeal would have been different, because testimony offered at the suppression hearings establishes that the police exceeded the scope of their search warrant when they searched Mr. McDermott's truck without probable cause to do so." *Id*. at 7.

A defendant is entitled to the effective assistance of counsel in connection with his first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).  The failure of appellate counsel to raise an issue can amount to constitutionally ineffective assistance. *Whiting v. Burt*, 395 F.3d 602, 616 (6th Cir. 2005); *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004). While appellate counsel need not raise every nonfrivolous issue on direct appeal, *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *McFarland*, 356 F.3d at 710; *Joshua*, 341 F.3d at 441; *Buell v. Mitchell*, 274 F.3d 337, 352 (6th Cir. 2001), counsel still must exercise reasonable professional judgment in determining which issues to raise. *Jones*, 463 U.S. at 753; *Joshua*, 341 F.3d at 441.  The presumption of effective assistance of appellate counsel will be overcome only when the ignored issues are clearly stronger than the issues presented. *Joshua*, 341 F.3d at 441; *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel is not ineffective for failing to raise an issue that lacks merit. *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ; *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001); *Jones*, 463 U.S. at 751-52 (it is important for appellate counsel to "winnow[ ] out weaker arguments on appeal and focus[ ] on one central issue if possible, or at most on a few key issues."); *Smith v. Murray*, 477 U.S. 527, 536 (1986) (the ability to discern worthy claims from unworthy ones is the "hallmark of effective appellate advocacy.")  The Sixth Circuit has suggested that certain considerations be taken into account in determining whether counsel rendered ineffective assistance

-15-

on appeal:

> (1) Were the omitted issues "significant and obvious"?

> (2) Was there arguably contrary authority on the omitted issues?

> (3) Were the omitted issues clearly stronger than those presented?

> (4) Were the omitted issues objected to at trial?

> (5) Were the trial court's rulings subject to deference on appeal?

> (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

> (7) What was appellate counsel's level of experience and expertise?

> (8) Did the petitioner and appellate counsel meet and go over possible issues?

> (9) Is there evidence that counsel reviewed all the facts?

> (10) Were the omitted issues dealt with in other assignments of error?

> (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes*, 388 F.3d at 191; *McFarland*, 356 F.3d at 711; *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002).  Additionally, "a habeas court may also consider '[p]revailing norms of practice as reflected in American Bar Association standards and the like.' " *Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006) quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984), *cert. denied*, 127 S. Ct. 941 (2007) .

"With respect to prejudice in the context of ineffective assistance of appellate counsel, a defendant must show a reasonable probability that, but for his counsel's defective performance, he would have prevailed on appeal." *Mapes*, 388 F.3d at 194.  While this analysis requires an

-16-

evaluation of the petitioner's underlying claims, it does not require a decision on these issues, but merely a determination that a reasonable probability exists that the petitioner would have prevailed on appeal.  *Id.*

Here, appellate counsel's actions were deficient.  By raising the suppression claim, appellate counsel was  required by Ohio procedural rules to file the transcripts of the trial court proceedings. Ohio R. App. P. 9(B); *Natl. City Bank v. Beyer*, 89 Ohio St.3d 152, 160 (Ohio 2000).  Therefore, it cannot be considered a tactical decision when counsel raised the claim and failed to file supporting transcripts as he was required to do.  Further, the burden on counsel in filing the transcript was minimal.  *See U.S. v. Frost*, 612 F.Supp.2d 903, 911 (N.D.Ohio,2009) (noting that counsel was ineffective, in part, because there was "no cost" to preserving an objection and counsel failed to do so).

In addition, appellate counsel's performance was deficience for failing to notice  a discrepancy in the trial record.  The trial judge found that the warrant was supported by probable cause.  However, the undersigned disagrees with Respondent's characterization of the record insofar as he claims that the judge "set aside the issue of timing of the execution of the warrant."  ECF Dkt. #35 at n. 4.  The trial judge was careful to note that he was holding that the warrant was supported by probable cause, assuming that it was executed appropriately.  ECF Dkt. #35, attach. 6 at 48-49. The judge used the phrase "set aside" to mean assuming temporarily.  The judge ultimately took the issue of timing of the warrant under advisement and stated that the motion was not "complete" .  ECF Dkt. #35, Attach. 6 at 49.  Neither party has directed the Court to a final ruling on the motion.  Had appellate counsel ordered, examined, and filed the transcripts (as he was required to do), he would have noticed this issue.  It is not disputed that the seized evidence was used at trial.  But the parties have not directed the Court to a ruling on the motion that would permit meaningful appellate review. Likewise, appellate counsel did not direct the appellate court to such a ruling or support his motion with transcripts as he was required to do by established procedural rules.  Thus, appellate counsel's performance was deficient.

Petitioner must also demonstrate prejudice.  Petitioner claims that "Due to the omission of the transcripts in the record, the court of appeals had no alternative but to presume the validity of the trial court proceedings." ECF Dkt. #1 at 14.  Respondent contends that in the Supreme Court of Ohio and on his application to reopen his appeal, Petitioner limited the scope of the prejudice to evidence seized from his truck.  ECF Dkt. #35 at 19.  Respondent contends that appellate counsel did not challenge the search of the truck on direct appeal or argue that the scope of the warrant failed to extend to the truck.  *Id*.  Respondent also contends that trial counsel did not raise the issue.  *Id*.  Respondent concludes that appellate counsel's argument was limited to whether the affidavit provided probable cause to support the warrant and focused on the legality of the search of the house and the Intrepid.  *Id*. at 20.

The undersigned recommends that the Court reject Respondent's contention regarding the scope of Petitioner's argument.  Sixth Circuit precedent demonstrates that a vehicle (in this case, Petitioner's truck), which is not listed in a search warrant, may nevertheless be searched  pursuant to that warrant as a part of the curtilage of a dwelling.  *U.S. v. Combs*, 468 F.2d 1390 (6th Cir. 1972); *see also* Tr. at 370-74, 458 (defense counsel moved to suppress evidence obtained from the truck; the prosecutor argued that "Mr. McDermott's vehicle was certainly on the curtilage."; and the judge denied the motion, partly because the truck was found in the curtilage of the dwelling).  In *Combs*, the Sixth Circuit noted that an affidavit supporting a search warrant supplied "no information" relating to a Cadillac where police recovered a sawed off shotgun.  *Id*. at 1392. Nevertheless, the *Combs* court reasoned that the warrant was not to be read in a technical manner, and it authorized officers to search the vehicle that was located on "the premises" where the affidavit supplied ample facts to establish probable cause to believe a crime was being committed.  *Id*.  Based on *Combs*, it is clear that the search in this case was conducted pursuant to the warrant, even though the warrant did not specify Petitioner's truck as an item to be searched or seized.  *See* ECF Dkt. #35, Ex. E-1.

Therefore, the search of the "house" should be read to include Petitioner's truck. The issue becomes whether the search was supported by probable cause. This is where Petitioner's argument fails. Petitioner claims that appellate counsel's failure to file suppression hearing transcripts establishes prejudice because "it is highly likely that McDermott's appeal would have resulted in a different outcome. ECF Dkt. #39 at 10. This conclusory statement falls short of establishing prejudice.

As stated above, Petitioner must demonstrate a likelihood that the outcome of his appeal would have been different. This inquiry "necessarily involves an evaluation of the underlying claims. . ." *Mapes*, 388 F.3d at 194. Petitioner must demonstrate "based on the nature of the underlying claims, there is a reasonable probability that, but for his counsel's [failings] ..., [the defendant] would have prevailed on his appeal." *Id*. (internal quotations omitted). Here, Petitioner offers no analysis pertaining to the underlying claim. He likens his case to *Evitts*, where appellate counsel failed to filed a statement of appeal as Kentucky Rules of Appellate Procedure required. ECF Dkt. #39 at 9, 10. In *Evitts*, however, the Unites States Supreme Court never reached the issue of prejudice, noting: "Respondent alleges-and petitioners do not deny in this Court-that his counsel's failure to obey a simple court rule that could have such drastic consequences required this finding. We therefore need not decide the content of appropriate standards for judging claims of ineffective assistance of appellate counsel." *Evitts*, 469 U.S. at 392 citing *Strickland*, 466 U.S. 668; *Cronic*, 466, U.S. 648. No such agreement or stipulation was made here. Therefore, Petitioner must meet the prejudice prong of *Strickland*.

Aside from a failure to include the suppression hearing transcripts, Petitioner offers no explanation demonstrating that he would prevail on appeal. He does not demonstrate the merits of his suppression argument and he has failed to show why his case is distinguishable from any other case where an attorney fails to file transcripts of an underlying hearing. In short, he attempts to bootstrap ineffectiveness for failure to comply with a procedural rule into prejudice. Contrary to *Strickland*, Petitioner's argument would apply, without regard to merit, to any case where counsel failed to file transcripts. However, Petitioner is not entitled to habeas relief merely because he did

-19-

not have a full review of a claim due to counsel's procedural error. *Strickland's* prejudice requirement permits habeas relief only Petitioner was denied a review of a potentially meritorious claim. *Mapes*, 388 F.3d at 194. Petitioner has made no showing of the merits of the underlying suppression issue that was reasonably likely to succeed on appeal.

Further, Petitioner has not demonstrated that the evidence seized from the truck[4] was of such a nature that its exclusion would have required remand to the trial court. Even if the state appellate court found that the evidence was improperly seized, the court could have proceeded to determine that the error was harmless in light of the remaining evidence against Petitioner. *U.S. v. Brooks,* 41 Fed.Appx. 718, 722, 2002 WL 1021904 at *4 (6th Cir. May 17, 2002) ("an erroneous failure to suppress this evidence would, at most, constitute harmless error in light of the overwhelming remaining evidence of Brooks's guilt."); *U.S. v. Baro,* 15 F.3d 563, 569 (6th Cir. 1994) ("Despite the district court's error in admitting this evidence in violation of the Fourth Amendment, Ramon Baro's conviction must stand. Given the extensive testimony at trial supporting Baro's guilt on the counts of conviction, this Court finds that the district court's admission of the tainted evidence was harmless error."); *State v. Spence*, 2003 WL 21904788at *9 (Ohio App. 12 Dist.,2003). Some of the evidence against Petitioner was testimony that he was seen taking two garbage bags from 569 Woodville. ECF Dkt. #8, Ex. 8 at 4, 5. Additionally, he was found in a small living room, in proximity to a shoe box that contained $9,510 in cash and in proximity to green cellophane plastic, identical to the plastic that bound the bundles of cash found in the Intrepid; and a bag full of hundreds of rubber bands was found on the floor with the cellophane (Detective Kathy Brewer testified that the money found in the Intrepid was wrapped in rubber bands first and then wrapped in the green cellophane plastic.). *Id*. Further, the window sill of the living room held a ball of aluminum foil that contained a chunk of powder cocaine, about three feet from appellant. *Id*. at 5-6. Additionally, an officer found a ledger in the living room. *Id*. at 6. Notably, the appellate court found Petitioner convictions to be supported by sufficient evidence, citing the foregoing evidence and not emphasizing the evidence

---

[4] The undersigned notes that, in the state courts, Petitioner limited his claim of prejudice to evidence seized from his truck. *See* ECF Dkt. #8, Ex. 12 at 12, Ex. 15 at 6-7. His claim should be limited in the same manner here, either by way of exhaustion principles or procedural default.

seized from Petitioner's truck. *See* ECF Dkt. #8, Ex. 8 at 10-14. It is therefore unlikely that the appellate court would find the suppression of the evidence from Petitioner's truck sufficient to warrant remand to the trial court.

Accordingly, the undersigned recommends that the Court find that Petitioner has not made a showing of prejudice.

For the foregoing reasons the undersigned recommends that the Court DISMISS Ground One in its entirety WITH PREJUDICE.

### B.    GROUND TWO

Petitioner claims that the state failed to introduce sufficient evidence to support convictions for complicity in drug trafficking, drug possession, and possession of criminal tools. ECF Dkt. #1 at 15. Petitioner contends that one of the state's key witnesses, Padilla-Montano, testified that Petitioner had never been around any of his drug deals with Moldonado. *Id*. Additionally, Petitioner contends that the evidence did not show that he was in control or possession of any of the items seized from Moldonado's house. *Id*. Instead, Petitioner contends that he spent the weekend leading up to his arrest sleeping and recovering from the news of his brother's death. *Id*. at 16.

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358 (1970). "In assessing the sufficiency of the evidence, we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *Id*. (internal citation omitted). In order to establish an insufficiency of the evidence claim, "the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) *quoting Jackson,* 443 U.S. at 319. "This requires successful challengers to meet a very high threshold, even with respect to newly-discovered evidence." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006). The inquiry is not whether the jury made the *correct*

-21-

determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict. *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.  *Scott,* 209 F.3d at 885 *quoting Jackson,* 443 U.S. at 319.

Here, the Ohio Court of Appeals addressed Petitioner's claim relating to the sufficiency of the evidence.  ECF Dkt. #8, Ex. 8 at 10-14.  Petitioner does not challenge the appellate court's characterization of the elements of the offenses as proscribed by Ohio statutory law.  *Id.* at 11-12; *see* ECF Dkt. #8, Ex. 8 at 11-12.  Rather, Petitioner contends that the evidence introduced at trial does not satisfy those elements.  As the appellate court noted, Petitioner was found in a scantily furnished house that contained nothing but evidence of drug trafficking.  *Id.* at 14.  Further, there was circumstantial evidence refuting his contention that he was merely an overnight guest.  Moldonado's girlfriend testified that she observed Petitioner ingest something into his nose.  *Id.* at 12.  This constitutes circumstantial evidence that Petitioner had access to the cocaine found in 569 Woodville.  Contrary to Petitioner's assertion that "[n]o evidence was introduced that proved Mr. McDermott was actually transporting, preparing, or selling drugs, or collecting or dealing with money at all," (ECF Dkt. #1 at 16) police found him in close proximity to $9,510 in cash, cocaine, and green cellophane and  black rubber bands similar to those used to wrap the money found in the Dodge Intrepid.  ECF Dkt. #8, Ex. 8 at 14; Tr. at 234-38, 257-58,  264-65.

Further, the state offered evidence that Petitioner removed trash from 569 Woodville and took it directly to the garbage truck.  Petitioner contends that the search warrant affidavit did not refer to this incident.  ECF Dkt. #39 at 13. The pertinent inquiry does not focus on the search warrant affidavit; it focuses on what evidence was introduced at trial.  *Jackson*, 443 U.S. at 324.  Petitioner contends that the state did not offer "any evidence related to the trash [he] took out."  *Id.* The state did offer evidence by way of Detective Poole's testimony that he observed Petitioner removing two garbage bags from the house, looking both directions before he went to meet the garbage truck at the end of the driveway.  Tr. at 324-27.  Petitioner's act of removing two garbage bags from a house that

contained "nothing but evidence of drug trafficking" constitutes circumstantial evidence of his complicity in the crimes charged.   Petitioner's challenge to the state's failure to introduce the contents of the trash is unavailing because the house contained nothing but evidence of drug trafficking.  Further, Petitioner's argument is improper in the context of a claim challenging the sufficiency of the evidence. *See Jackson*, 443 U.S. at 324 ("We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254-if the settled procedural prerequisites for such a claim have otherwise been satisfied-the applicant is entitled to habeas corpus relief if it is found that **upon the record evidence adduced at the trial** no rational trier of fact could have found proof of guilt beyond a reasonable doubt.") (emphasis added).  Here, the evidence adduced permits a reasonable inference Petitioner was complicit in the criminal activities in the house because Petitioner looked both ways before removing two bags full of trash from a house containing "nothing but evidence of drug trafficking." ECF Dkt. #8, Ex. 8 at 14.  And he took the bags directly to the garbage truck.  Tr. at 324-27.

Petitioner contends that a receipt from The Andersons hardware store provides no logical connection to between him and Moldonado's drug trade.  ECF Dkt. #39 at 13.  Police recovered  the receipt from Petitioner's vehicle, while it was parked at Moldonado's house, and the receipt reflected the purchase of items consistent with the re-rock machine.  Tr. at 481-85.  Specifically, it showed the purchase of a gallon of acetone, corner braces, and tools that "could be consistent with the rerock machine." *Id*. at 483.

Petitioner also argues that "[n]o scientific evidence connected [him] to the house in which the drugs and money were found or to the drugs or the money seized."  ECF Dkt. #39 at 14.  Petitioner cannot claim there is a lack of evidence connecting him to the house; he was in the house when the search warrant was executed.  Further, the undersigned is not aware of any requirement that scientific evidence be admitted to establish this connection.  Thus, it appears that Petitioner is challenging the weight of the evidence connecting him to the drug trafficking paraphernalia because it is not scientific in nature.  This type of challenge is not cognizable in a habeas claim. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman-Cooper*, No. 1:05CV103, 2006

-23-

WL 3242101 (S.D. Ohio Oct. 5, 2006); *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). Accordingly, the Court should consider the sufficiency of the evidence presented at trial. *See Jackson*, 443 U.S. at 324 (*discussed above*). In the context of a sufficiency of the evidence claim, the Court should find no merit in Petitioner's contention that scientific evidence was necessary. Rather, the Court should consider the evidence presented, such as Petitioner's proximity to the cellophane, rubber bands, cash, cocaine, and ledger. The Court should also consider the lack of furnishings in the house and Petitioner's activity related to the garbage bags.

Lastly, Petitioner contends that Padilla-Montano testified that Petitioner was not involved "in any money handling or in any previous drug deal to which Padilla-Montano was a party." ECF Dkt. #39 at 12, 14. Petitioner provides no citation for this evidence. Mr. Padilla-Montano testified that Petitioner was not present in the kitchen of the 569 Woodville home when Padilla-Montano and Moldonado conducted "money business" on July 15, 2002. Tr. at 419. The undersigned does not find support in the record for Petitioner's contention that Padilla-Montano testified that Petitioner was not involved in "*any* money handling." (emphasis added).

Further, Padilla-Montano testified that Petitioner was not present when he and Moldonado did "drug-related things." *Id*. Although Petitioner contends this evidence is helpful to his case, the Court may not weigh the evidence. *U.S. v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). In considering a claim that a conviction was not supported by sufficient evidence, it is of little,. if any, consequence that Padilla-Montano did not see Petitioner participate "money business" or "drug-related things." That testimony would have only corroborated the state's other evidence. Petitioner has done nothing but challenge the weight of Padilla-Montano's testimony. The jury has considered his testimony along with the record as a whole. Petitioner's attempt to parse out his testimony from the other evidence of record is inappropriate when challenging the sufficiency of the evidence. *U.S. v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005)("This Court reverses a judgment for insufficiency of

-24-

the evidence only if the judgment is not supported by substantial and competent evidence **upon the record as a whole**.") (internal quotation omitted) (emphasis added).  Therefore, the Court should find this challenge unavailing.

Considering all of the evidence presented, in the light most favorable to the prosecution, the undersigned recommends that the Court find that sufficient evidence supports Petitioner's convictions.  Accordingly, the undersigned RECOMMENDS that the Court DISMISS Ground Two in its entirety WITH PREJUDICE.

## VI.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety WITH PREJUDICE.

DATE: September 28, 2010                    __*s/  George J. Limbert*_____
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).